**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SABRA RENCH, individually and on behalf of all others similarly situated, | ) ) |
| | )   **Case No.** |
| Plaintiff, | ) |
| v. | )   **JURY TRIAL DEMANDED** |
| | ) |
| TD Bank, N.A., A-1 Allergy Relief, Inc., an Indiana Corporation, and HMI Industries, Inc., a Delaware Corporation, | ) ) ) |
| | ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Sabra Rench, individually, and on behalf of all others similarly situated, for her Complaint against Defendants HMI Industries, Inc. ("HMI"), A-1 Allergy Relief, Inc. ("A-1 Allergy"), and TD Bank, N.A. ("TD Bank"), states as follows:

## NATURE OF THE ACTION

1.      Plaintiff Sabra Rench, a 72 year old consumer, brings this class-action lawsuit individually and on behalf of all other similarly situated consumers to enforce their rights under the Federal Truth in Lending Act, the Illinois Prizes and Gifts Act, and the Federal Racketeer Influenced and Corrupt Organizations Act.  Plaintiff also brings an individual claim against Defendants to enforce her rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

2.      Defendant HMI manufactures the FILTERQUEEN® brand vacuums and air filter devices.

3.      Defendant A-1 Allergy is a distributor of HMI's FILTERQUEEN® products.

4.      Defendant TD Bank finances the sales of the FILTERQUEEN® products by offering "Renovate Credit Cards" through TD Retail Card Services, a division of TD Bank.

5.     As set forth below, Defendants formed an association-in-fact enterprise for the purpose of manufacturing, selling, and financing FILTERQUEEN® products.

6.     As part of this enterprise, Defendants use the U.S. mail to deliver promotional sweepstakes "scratcher" tickets that violate the Illinois Prizes and Gifts Act, 815 ILCS 525/1 *et seq.*

7.     Upon information and belief, Defendants target senior citizens to receive the promotional tickets.

8.     The promotional "scratcher" tickets guarantee the recipient will win one of the listed prizes and instruct the consumer to call the "Winners Hotline" to determine which of the listed prizes the consumer has won.

9.     When the consumer contacts the "Winners Hotline" to claim her prize, Defendants condition receipt of the prize on listening to an in-home sales presentation for the FILTERQUEEN® products.

10.     At the sales presentation, Defendants' agents engage in deceptive practices, including, but not limited to, concealment and misrepresentation of material information related to the products, the financing terms, and the transaction terms.

11.     At the sales presentation, Defendants' agents instruct the consumer to complete a TD Bank Credit Card Account Application.  The Application does not disclose material information such as the finance charges and the APR (which was 28.99% for Plaintiff), in violation of the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. and its implementing Regulation Z, 12 C.F.R. 226.

12.     When TD Bank issues the Credit Card to the consumer, it does not disclose material information, including the finance charges and the APR, in violation of the Federal

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing Regulation Z, 12 C.F.R. 226.

13.     Defendants are each associated with this enterprise, and each conspired to and did conduct or participate, directly or indirectly, in the conduct of the enterprise through a pattern of racketeering activity, in violation of the RICO, 18 U.S.C. § 1961 *et seq*.

14.     Plaintiff, and others similarly situated, have suffered injury from Defendants' willful and knowing violations of the Federal Truth in Lending Act, RICO, and the Illinois Prizes and Gifts Act.  Additionally, Plaintiff has suffered injury from Defendants' willful and knowing violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.  ("ICFA")

## THE PARTIES

15.     Plaintiff Sabra Rench is a 72 year old citizen of the state of Illinois residing in Bond County, Illinois.

16.     Defendant TD Bank, N.A., is a National Bank registered in Delaware and doing business throughout Illinois and the United States.  It is a citizen of Delaware and New Jersey, having its principal place of business in New Jersey.

17.     Defendant A-1 Allergy Relief, Inc., is an Indiana Corporation doing business throughout Illinois and the United States and is a citizen of Indiana, having its principal place of business in Indiana.

18.     Defendant HMI Industries, Inc., is a Delaware Corporation doing business throughout Illinois and the United States and is a citizen of Delaware and Ohio, having its principal place of business in Ohio.

## JURISDICTION AND VENUE

19.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the Plaintiff's claims arising under the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. and the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. Jurisdiction of the state law claims is proper under the doctrine of Supplemental or Pendent Jurisdiction pursuant to 28 U.S.C. § 1367(a). Additionally, this Court has general and specific jurisdiction over Defendants because Defendants have sufficient minimum contacts within the State of Illinois and within the Southern District of Illinois, and further because certain material acts upon which the suit is based occurred within the Southern District of Illinois.

20.     Venue is proper in the Southern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) in that: (A) Defendants reside in the Southern District of Illinois because they are subject to personal jurisdiction within the Southern District of Illinois; (B) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (C) Defendants may be found in this District. Venue is also proper in the Southern District of Illinois pursuant to 18 U.S.C. § 1965 in that Defendants reside, are found, have an agent, or transact their affairs in the Southern District of Illinois.

## GENERAL ALLEGATIONS

21.     Defendant HMI manufactures the FILTERQUEEN® brand vacuums and air filter devices.

22.     Defendant A-1 Allergy distributes HMI's FILTERQUEEN® products to consumers throughout the United States.

23.     Defendant TD Bank finances the sales of the FILTERQUEEN® products by offering a "Renovate Credit Card" on which the products are purchased.

24.     Upon information and belief, in or around 2007, Defendants formed an association-in-fact enterprise for the purpose of profiting from the manufacturing, selling, and financing of FILTERQUEEN® products.

25.     As part of this enterprise, Defendants used the U.S. mail to send promotional sweepstakes "scratcher" tickets (the "Ticket") to potential consumers in Illinois and other states. A copy of the front and back of the Ticket is attached hereto as Exhibit A and incorporated herein by reference.

26.     The front of the Ticket encourages the recipient to "play a hand of poker."  It states that there are "OVER $250,000 IN PRIZES," and, "You are guaranteed to win one of the Prizes listed on the back of this card!"  Ex. A.

27.     The back of the Ticket states that recipients must call immediately to learn the prize they have won because the "[w]inning hand must be verified with master key chart to determine prize."  Ex. A.

28.     The fine print of the Ticket provides a list of six prizes, the retail value of the prizes, and the odds of winning each prize.  The fine print states: "You may be asked to view a Health and/or Safety Product.  No obligation required."  Ex. A.

29.     The back of the Ticket states that the Ticket is sponsored by A-1 Allergy Relief, Inc., 1400 E. Pugh Drive, Suite 18, Terre Haute, IN 47802.  The fine print also states that the Ticket is "Sponsored by Health and Safety Merchants throughout the U.S," though it does not disclose these sponsors' names or addresses.  Ex. A.

30.     Though not listed as sponsors, Defendants HMI and TD Bank are entities on whose behalf the promotion is conducted to promote or advertise goods, services, or property of each entity.

31.     Upon information and belief, Defendants target senior citizens with the Ticket.

32.     Upon information and belief, Defendants do not offer all of the six prizes listed, the retail value set forth does not accurately describe the actual retail value of the prizes distributed, and the prizes are not issued in accordance with the odds described.

33.     When recipients of the Ticket call the numbers listed to "learn the prize [they] have won," they are not informed of the prize they have won, but instead told that they must schedule a time for a salesperson to come to their home to conduct a product demonstration.

34.     During the product demonstration Defendants' agents engage in high-pressure sales tactics to sell HMI's FILTERQUEEN® brand vacuums and air filters.  These demonstrations often last for hours and involve the Defendants' agents removing the products from their boxes, assembling them in the home, and demonstrating them.

35.     During these demonstrations, Defendants' agents present a standard-form TD Bank Credit Card Account Application to the consumer (the "Credit Card Application").  A copy of the form Credit Card Application that was given to Plaintiff is attached hereto as Exhibit B and incorporated herein by reference.

36.     The Credit Card Application consists of a single sheet of paper that is unaccompanied by any Terms and Conditions.  The Credit Card Application does not disclose the finance charges or the APR for the Credit Card.

37.     Defendants' agents instruct the consumers to complete the Credit Card Application in case he or she wants to purchase one of the FILTERQUEEN® products.

38.     If a consumer purchases a FILTERQUEEN® product, the charge is applied to the TD Bank Credit Card; however, the consumer is not provided with any written disclosures as to

the card's finance charges or APR until the consumer receives the first monthly statement from the Bank.

**Defendants' Deceptive Mail Promotion and Sales Practices Directed towards Plaintiff**

39.     In the late summer/early fall of 2012, Plaintiff received in the mail at her home a promotional sweepstakes Ticket in the form attached hereto as Exhibit A.

40.     The Ticket guaranteed that Plaintiff would receive one of the listed prizes. Indeed, when Plaintiff scratched the ticket to reveal the poker hand, she had a Full House (2 Kings with 3 Queens).  *See* Ex. A.

41.     Having scratched a "winning hand," Plaintiff contacted the "Winners Hotline" to claim her prize.

42.     Rather than informing Plaintiff of what prize she had won, the person on the other end of the phone informed Plaintiff that she had to schedule a time for a salesperson to come to her home to conduct a product demonstration.

43.     On the evening of September 7, 2012, two of Defendants' agents (the "Sales Agent(s)") visited Plaintiff at her home.

44.     During this visit, the Sales Agents attempted to conduct a demonstration of two FILTERQUEEN® products called the Majestic Surface Cleaner, a canister vacuum, and the Defender Room Air Cleaner, an air filter (collectively, the "Products").

45.     The Sales Agents removed both of the Products from their boxes while in Plaintiff's home and assembled them.

46.     The sales pitch lasted for several hours, during which time the power in Plaintiff's house went out.

47.     In the darkness, the Sales Agents proceeded with the sales pitch by flashlight, though the demonstration of the Products could not proceed.

48.     By flashlight, one of the Sale Agents instructed Plaintiff to complete a TD Bank Credit Card Account Application (the "Credit Card Application") to see if she would be approved to purchase the Products.  *See* Ex. B.

49.     Plaintiff did not receive any other documentation with the Credit Card Application.

50.     During the visit, the Sales Agents promised Plaintiff 0% financing on the Products.

51.     The Sales Agents left the air filter with Plaintiff until they could return at a later date to complete the vacuum demonstration.

52.     A few days later, Plaintiff called one of the Sales Agents and requested that they pick up the air filter because she did not want to keep it.  The Sales Agent scheduled a time to return to the home.

53.     On September 14, 2012, the Sales Agent returned to Plaintiff's home.

54.     At this time, Plaintiff asserted that she wanted to return the air filter without purchasing any goods.

55.     The Sales Agent urged Plaintiff to keep the air filter and watch a demonstration of the vacuum.

56.     The Sales Agent proceeded to vacuum Plaintiff's rocking chair, after which she opened the vacuum and showed Plaintiff all the dirt it had pulled from the chair.

57.     Upon information and belief, the Sales Agent had "pre-loaded" the vacuum with dirt to mislead Plaintiff as to the amount of dirt that was actually removed from the chair.

58.     The Sales Agent again offered Plaintiff several "deals" to entice her to purchase the Products, including:

- 0% financing for the Products;

- Half-price off the Products;

- A trade-in discount if Plaintiff surrendered her own vacuum;

- A total price of $1,478.00 if Plaintiff paid off the bill in less than two years, or 24 monthly payments of $105.00/month to pay for the Products in full (a copy of the Sale Agent's price calculations is attached as Exhibit C and incorporated herein by reference); and

- A two-month "trial period" during which Plaintiff could test the Products free of charge and return them within the two-month period without cost.

59.     Based on these representations, Plaintiff signed the Sales Memorandum and Bill of Sale Receipt, copies of which are attached hereto as Exhibits D and E (front and back), respectively, and incorporated herein by reference.

60.     The total price listed on the Bill of Sale Receipt is $2,798.00, consisting of:

- $2,798.00 for the FILTERQUEEN® vacuum

- $1,199.00 for the FILTERQUEEN® air filter

- -$1,406.26 for a "Trade In/Discount"

- $207.26 for sales tax.

Ex. E.

61.     Upon information and belief, Defendants' agents receive a higher commission on sales of $2,798.00 or higher.

**Plaintiff's Attempt to Rescind the Contract within the Two-Month Period**

62.     Intending to return the Products within the two-month period, Plaintiff called the Sales Agent and the "Winners Hotline" on several occasions within days several after the September 14, 2012 home visit; however, Plaintiff received no answer or answering machine.

63.     Suspecting that her calls were being "screened" by Defendants, Plaintiff placed a call to Defendants from the Bond County Senior Center, and the call was answered.

64.     Defendants denied Plaintiff's request to return the Products, asserting that she was required to make such a request in writing within three days of the sale.

65.     On October 12, 2012, Plaintiff wrote a letter to A-1 Allergy requesting that they pick up the Products, a copy of which is attached hereto as Exhibit F and incorporated herein by reference.

66.     Defendants denied her request and continue to refuse to provide a refund, to pick up the Products, or to return Plaintiff's original vacuum.

**Defendants' Inadequate Credit Card Disclosures**

67.     During both the September 7 and September 14, 2012 visits, Plaintiff did not receive any documentation disclosing the finance charges or the APR of the TD Bank Credit Card.

68.     Thereafter, Plaintiff received a Renovate Credit Card issued by TD Bank.  A copy of the cover letter Plaintiff received with the Credit Card is attached hereto as Exhibit G and incorporated herein by reference.

69.     At this time, Plaintiff did not receive any written disclosures stating the finance charges or the APR for the Credit Card.

70.     Approximately two weeks after the FILTERQUEEN® charges were incurred on the Renovate Credit Card, Plaintiff received a letter from TD Bank informing Plaintiff that, on November 15, 2012, TD Bank would close Plaintiff's Renovate Credit Card account and deactivate the Credit Card.  Any balance on the Credit Card would remain until paid in full.  A copy of this letter is attached hereto as Exhibit H and incorporated herein by reference.  Plaintiff did not receive any other written disclosures with this letter stating the finance charges or the APR for the Credit Card.

71.     On or about October 11, 2012, Plaintiff received a Credit Card Statement (the "October Statement") showing a new balance of $2,798.00.  This statement disclosed, for the first time, that the Credit Card account had a variable APR of 28.99%.  A copy of the October Statement is attached hereto as Exhibit I and incorporated herein by reference.

72.     Plaintiff did not make a payment on the Credit Card statement as she attempted to rescind the sale with Defendants based on Defendants' prior representations to her.

73.     In November, Plaintiff received a past-due account notice from TD Bank stating that the balance on the Credit Card account had been increased to $2,891.69 because of the APR. A copy of this letter is attached hereto as Exhibit J and incorporated herein by reference.

74.     In December, Plaintiff received another past-due account notice from TD Bank stating that the balance of the Credit Card account had been increased to $2,994.80 because of the APR.  A copy of this letter is attached hereto as Exhibit K and incorporated herein by reference.

75.     In January, 2013, Plaintiff received a bank statement showing another $47.38 in interest charges had been added to her account balance.  A copy of the January 11, 2013 billing

statement showing this charge is attached hereto as Exhibit L and incorporated herein by reference.

76.     To avoid further interest charges on the account, Plaintiff paid off the Credit Card using a different credit card with a lower interest rate.

77.     TD Bank charged Plaintiff $262.18 in interest on the Renovate Credit Card account.

78.     As a result of TD Bank's failure to disclose material information in its Credit Card Application and Credit Card Sales Memorandum, Defendant TD Bank has profited at the expense and in derogation of the rights of Plaintiff and others similarly situated.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of all others similarly situated, as representative of the following class (the "TILA Class"):

> All individuals in the United States who, between September 6, 2012 and the date that notice is mailed to the TILA Class, signed a TD Bank, N.A. Credit Card Account Application in the form of or substantially similar to Exhibit B  and/or a Renovate Credit Card Account Sales Memorandum in the form of or substantially similar to Exhibit D.

80.     For purposes of the claims set forth below brought pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, Plaintiff also asserts a class (the "RICO Class") defined as:

> All individuals in the United States who, within the four years preceding the filing of this Complaint: (a) received in the mail a promotional sweepstakes "scratcher" ticket sponsored by A-1 Allergy Relief, Inc., HMI Industries, Inc., and/or TD Bank, N.A., in the form of or substantially similar to Exhibit A and (b) purchased a FILTERQUEEN® product.

81.     For purposes of the claims set forth below brought pursuant to the Illinois Prizes

and Gifts Act, 815 ILCS 525/1 *et seq.*, Plaintiff also asserts a subclass (the "Subclass") defined

as:

> All individuals who are citizens of Illinois and who, within three
> years prior to the filing of this Complaint: (a) received in the mail a
> promotional sweepstakes "scratcher" ticket sponsored by A-1
> Allergy Relief, Inc., HMI Industries, Inc., and/or TD Bank, N.A.,
> in the form of or substantially similar to Exhibit A; and (b)
> purchased a FILTERQUEEN® product.[1]

82.     Excluded from the Classes are affiliates, predecessors, successors, officers,

directors, agents, servants, or employees of Defendants, and the immediate family members of

such persons.  Also excluded are any trial judge who may preside over this action, court

personnel and their family members and any juror assigned to this action.

83.     Plaintiff is a member of the Classes which she seeks to represent.

84.     The particular members of the Classes are capable of being described without

difficult managerial or administrative problems.  The members of the Classes are readily

identifiable from the information and records in the possession or control of Defendants.

85.     Upon information and belief, each of the Classes consists of at least hundreds of

individuals and therefore is so numerous that joinder is impracticable.

86.     Plaintiff's claims are typical of those in the Classes and are based on the same

legal and factual theories.

87.     There are numerous questions of law and fact common to the Classes which

predominate over any questions affecting only individual class members, and, in fact, the wrongs

suffered and remedies sought by Plaintiff and the other members of the Classes are premised

---

[1] Unless otherwise noted, the TILA Class, the RICO Class, and Subclass are collectively referred
to as the "Class."

upon an unlawful scheme by Defendants.  The principal common issues include, but are not limited to, the following:

a.   the nature and extent of each Defendants' participation in and sponsorship of the promotional sweepstakes "scratcher" tickets;

b.   whether Defendants' conduct constitutes a violation of the Illinois Prizes and Gifts Act, 815 ILCS 525/1 *et seq.*;

c.   whether Defendant TD Bank is a "creditor" under the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing Regulation Z, 12 C.F.R. 226;

d.   whether the disclosures by TD Bank in the Renovate Credit Card Application were in compliance with the requirements of the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing Regulation Z, 12 C.F.R. 226;

e.   whether the disclosures by TD Bank in the Renovate Credit Card Sales Memorandum were in compliance with the requirements of the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing Regulation Z, 12 C.F.R. 226;

f.   whether Defendants were engaged in an enterprise or an association-in-fact enterprise under the Federal Racketeer Influenced and Corrupt Organizations Act, 18 USC § 1961 *et seq.*;

g.   whether Defendants conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of racketeering activity, namely

mail fraud, in violation of the Federal Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1961 *et seq.*;

h.      whether Defendants' scheme extended over a sufficient period or still

continues as of the date of filing so as to constitute a long-term threat of

racketeering activity;

i.      whether Defendants should be enjoined from mailing the promotional

sweepstakes tickets;

j.      whether Defendants should be enjoined from engaging in the deceptive

acts alleged herein;

k.      the method of determining the statutory penalties for which Defendant TD

Bank is liable to Plaintiff and the TILA Class pursuant to the Federal

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing

Regulation Z, 12 C.F.R. 226;

l.      the method of determining the statutory penalties for which Defendants

are liable to Plaintiff and the RICO Class pursuant to the Federal

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et*

*seq.*;

m.      the method of determining the statutory penalties for which Defendants

are liable to Plaintiff and the Subclass pursuant to the Illinois Prizes and

Gifts Act, 815 ILCS 525/1 *et seq.*;

n.      whether Defendants benefited from the conduct alleged herein; and

o.      whether punitive damages are appropriate to punish and deter Defendants'

conduct, as aforesaid.

88.     Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has suffered injury from the practices complained of and is ready, willing, and able to serve as class representative.  Furthermore, Plaintiff's counsel is experienced in handling class actions and actions involving unlawful commercial practices.  Neither Plaintiff nor her counsel has any interest that might cause them not to vigorously pursue this action.

89.     Certification of a plaintiff class under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that the Plaintiff and the Class members seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy.  A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.  Moreover, the individual Class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against these Defendants.

90.     Alternatively, certification of a plaintiff class under Federal Rule of Civil Procedure 23(b)(1) is appropriate in that inconsistent or varying adjudications with respect to individual members of the Classes would establish incompatible standards of conduct for the Defendants or adjudications with respect to individual members of the Classes as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

**COUNT I**
**Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*.**

**(Against TD Bank, N.A.)**

91.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

92.     Defendant TD  Bank is a "creditor" as defined by the Federal Truth in Lending Act, 15 U.S.C. § 1602(g) because it: (1) regularly extends consumer credit payable by agreement in more than four installments or for which a finance charge may be required; and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness and/or is the issuer of the Renovate Credit Card.

93.     The Credit Card Account offered by TD Bank is an open end consumer credit plan as defined by the Federal Truth in Lending Act, 15 U.S.C. § 1602 (i) and (j) because it is a credit plan primarily for personal, family, or household purposes under which TD Bank reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance.

94.     As described herein, Defendant TD Bank, through its sales agents, failed to provide Plaintiff and the TILA Class with the following information in the Renovate Credit Card Application and/or the Renovate Credit Card Account Sales Memorandum, in violation of the Federal Truth in Lending Act, 15 U.S.C. § 1637(a) and (c)(4) and Regulation Z, 12 C.F.R. § 226.5a:

- the annual percentage rate;

- the variable rate information;

- any discounted initial rate, premium initial rate, or introductory rate;

- any penalty rates;

- any rates that depend on the consumer's creditworthiness;

- any annual or other periodic fees that may be imposed for the issuance or availability of the card;

- any fixed finance charge;

- any minimum interest charge;

- any transaction charges;

- the duration of a no-interest grace period or whether no such period applies;

- the balance computation method; and

- the statement on when charges incurred on the card are due.

95.     Defendant TD Bank, through its sales agents, intentionally withheld the required disclosures, in particular, the 28.99% APR associated with the Renovate Credit Card, for the purpose of inducing consumers into applying for and making purchases for FILTERQUEEN® products with the Renovate Credit Card.

96.     As a direct and proximate cause of the above violations, Plaintiff and members of the TILA Class have been damaged in the amounts charged by TD Bank for items including, but not limited to, interest and other charges applied to the Renovate Credit Card.

97.     Pursuant to 15 U.S.C. § 1640(a)(4), Plaintiff and members of the TILA Class are entitled to statutory damages for Defendant's violation of 15 U.S.C. § 1637(a).

98.     Pursuant to 15 U.S.C. § 1640(a)(4), Plaintiff and members of the TILA Class who obtained and used the Renovate Credit Card and/or paid a fee described in 15 U.S.C. § 1637(c)(4)(A)(i) are entitled to statutory damages for Defendant's violation of 15 U.S.C. §1637(c).

99.     As a result of the above violations and pursuant to 15 U.S.C. § 1640, Plaintiff and the TILA Class are entitled to:

      a.      actual damages incurred;

      b.      statutory damages in such amount as the Court may allow, except that as to each member of the TILA Class, no minimum recovery shall be applicable, and the total amount of statutory damages shall not exceed the lesser of $1,000,000.00 or 1 per centum of the net worth of TD Bank, N.A.; and

      c.      pre-judgment interest and costs of suit, including Plaintiff's reasonable attorneys' fees.

**COUNT II**
**Illinois Prizes and Gifts Act, 815 ILCS 525/1 *et seq.***

**(Against A-1 Allergy Relief, Inc., HMI Industries, Inc., and TD Bank, N.A.)**

100.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

101.    Defendant A-1 Allergy Relief, Inc. is a "sponsor" of the promotional sweepstakes "scratcher" ticket attached hereto as Exhibit A (the "Ticket") pursuant to 815 ILCS 525/10 because: (a) it identifies itself as a sponsor of the promotion; (b) it is "a person on whose behalf a promotion is conducted to promote or advertise goods, services, or property of that person; and/or (c) it is "a person who conducts a promotion on behalf of another sponsor."

102.    Defendant HMI Industries, Inc., is a "sponsor" of the Ticket pursuant to 815 ILCS 525/10 because it is "a person on whose behalf a promotion is conducted to promote or advertise goods, services, or property of that person."

103.    Defendant TD Bank, N.A., is a "sponsor" of the Ticket pursuant to 815 ILCS 525/10 because it is "a person on whose behalf a promotion is conducted to promote or advertise goods, services, or property of that person."

104.    Defendants used the mail to send the written promotional offer "scratcher" ticket in the form of, or substantially similar to, Exhibit A to persons in the State of Illinois.

105.    The back of the written promotional offer "scratcher" tickets listed A-1 Allergy as a sponsor and provided an address for A-1 Allergy.

106.    The written promotional offer "scratcher" tickets also stated that they were "Sponsored by Health and Safety Merchants throughout the U.S," though no other company names and addresses were disclosed.

107.    The promotional offers stated that no obligation was required to obtain the prize; however, Defendants required that recipients of the tickets contact the "Winners Hotline" to determine what prize was won and required an in-home sales presentation before the recipient was able to obtain a prize.

108.    As described herein, Defendants violated Section 20 of the Illinois Prizes and Gifts Act, 815 ILCS 525/20(b), by representing that the recipient won or unconditionally will be the winner of a prize, while:

- failing to give the winning prize to the recipients of the written promotion without obligation;

- failing to notify the recipient at no expense within 15 days of winning the prize; and/or

- misleading the recipient as to the nature of available prizes, the odds of winning, the retail value, and the obligations to obtain the prize.

109.     As described herein, Defendants violated Section 25 of the Illinois Prizes and Gifts Act, 815 ILCS 525/25, by failing to disclose the following information on the written promotional prize offer with a clear and conspicuous statement at the onset of the offer:

- the true name or names of the sponsors and the addresses of the sponsors' actual principal place of business, including HMI Industries, Inc., and TD Bank, N.A.; and/or

- that receipt of the prize is subject to a restriction, and a description of the restriction.

110.     Defendants intentionally failed to comply with Sections 20 and 25 of the Illinois Prizes and Gifts Act for the purpose of maximizing their profits at the expense of consumers.

111.     As a direct and proximate cause of Defendants' intentional violations, Plaintiff and the members of the Subclass have been damaged in the amounts charged by Defendants for FILTERQUEEN® products and finance or interest charges incurred.

112.     Pursuant to 815 ILCS 525/40(b), Plaintiff and members of the Subclass are entitled to statutory damages in the amount of the greater of $500 or twice the amount of pecuniary loss.

113.     As a result of the above violations and pursuant to 815 ILCS 525/40, Plaintiff and the Subclass are entitled to:

a.     actual damages incurred;

b.     statutory damages in such amount of the greater of $500 or twice the amount of pecuniary loss; and

c.     pre-judgment interest and costs of suit, including Plaintiff's reasonable attorneys' fees.

## COUNT III
## Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

### (Against Defendants A-1 Allergy Relief, Inc., HMI Industries, Inc., and TD Bank, N.A.)

114.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

115.    Defendant A-1 Allergy Relief, Inc., HMI Industries, Inc., and TD Bank, N.A., are "persons" pursuant to 18 U.S.C. § 1961(3) because each is an "entity capable of holding a legal or beneficial interest in property."

116.    Defendants A-1 Allergy, HMI, and TD Bank constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4) in that they are an association-in-fact with a common and shared purpose by which A-1 Allergy sells products manufactured by HMI, which sales are financed by TD Bank (the "Enterprise").  To advance this purpose, this association-in-fact Enterprise engages in activities distinct from the racketeering activity alleged herein.

117.    Upon information and belief, Defendants formed the Enterprise in or around 2007.

118.    As described herein, Defendants committed the "racketeering activity" of mail fraud within the meaning of 18 U.S.C. § 1961(B) and 18 U.S.C. § 1341 in that A-1 Allergy, HMI, and TD Bank intentionally devised a scheme to defraud consumers to obtain money by the use of illegal promotional mailings, false pretenses, representations, and promises, and concealment of material information, and used the U.S. mail or interstate commercial carrier to further this scheme.

119.    Defendants utilized this scheme to profit at the expense of consumers throughout the United States.

120.     Upon information and belief, Defendants utilized this scheme to target senior citizens.

121.     The racketeering acts committed by Defendants constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because there have been at least two acts of mail fraud within a 10-year period, which acts are related and continuous.  In fact, Plaintiff has received additional promotional offer "scratcher" tickets from Defendants after receiving the initial Ticket described herein.  These racketeering acts are related in that the acts of mail fraud have the same or similar purposes, results, participants, victims, methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated. These racketeering acts are continuous in that they have occurred over a period exceeding two years, will continue into the future, and pose the threat of continuing for years because they are part of Defendants' regular way of doing business.

122.     The activities of the Enterprise affect interstate commerce because (a) the Enterprise uses interstate mail carriers to carry out the mail fraud; and (b) the Enterprise is itself directly engaged in the production and distribution of goods, services, and property in interstate commerce.

123.     Defendant A-1 Allergy is associated with the Enterprise and has willfully or knowingly conducted or participated in the affairs of the Enterprise through the aforementioned pattern of racketeering activity, including creating and mailing the fraudulent promotional offers and engaging in the subsequent fraudulent activity, in violation of 18 U.S.C. § 1962(c).

124.     Defendant HMI is associated with the Enterprise and has willfully or knowingly conducted or participated in the affairs of the Enterprise through the aforementioned pattern of

racketeering activity, including surreptitiously sponsoring the fraudulent promotional offers and participating in the subsequent fraudulent activity, in violation of 18 U.S.C. § 1962(c).

125.    Defendant TD Bank is associated with the Enterprise and has willfully or knowingly conducted or participated in the affairs of the Enterprise through the aforementioned pattern of racketeering activity, including surreptitiously sponsoring the fraudulent promotional offers, participating in the subsequent fraudulent activity, and concealing material information related to the consumers' financing terms, in violation of 18 U.S.C. § 1962(c).

126.    As a direct and proximate cause of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff and members of the RICO Class have been damaged in the amounts charged by Defendants for FILTERQUEEN® products and finance or interest charges incurred.

127.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff and members of the RICO Class are entitled to statutory damages in the amount of three times the actual damages.

128.    As a result of the above violations and pursuant to 18 U.S.C. § 1964(c), Plaintiff and the RICO Class are entitled to:

       a.    actual damages incurred;

       b.    statutory damages in such amount of three times the actual damages; and

       c.    pre-judgment interest and costs of suit, including Plaintiff's reasonable attorneys' fees.

## COUNT IV
### Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)

**(Against Defendants A-1 Allergy Relief, Inc., HMI Industries, Inc., and TD Bank, N.A.)**

129.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

130.    As set forth herein, A-1 Allergy agreed and conspired with various persons, including HMI and TD Bank, to violate 18 U.S.C. § 1962(c) by directly and indirectly conducting and participating in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  A-1 Allergy agreed and conspired to commit at least two of the predicate acts of mail fraud in furthering the common purpose of the Enterprise to commit multiple and ongoing frauds as described above against Plaintiff and members of the RICO Class.  A-1 Allergy also knowingly agreed to participate in and facilitate the aforementioned activities of the operators or managers of the Enterprise to further the fraudulent scheme.

131.    As set forth herein, HMI agreed and conspired with various persons, including A-1 Allergy and TD Bank, to violate 18 U.S.C. § 1962(c) by directly and indirectly conducting and participating in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  HMI knowingly agreed to participate in and facilitate the aforementioned activities of the operators or managers of the Enterprise to further the fraudulent scheme.

132.    As set forth herein, TD Bank agreed and conspired with various persons, including A-1 Allergy and HMI, to violate 18 U.S.C. § 1962(c) by directly and indirectly conducting and participating in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  TD Bank knowingly agreed to participate in and facilitate the aforementioned activities of the operators or managers of the Enterprise to further the fraudulent scheme.

133.    This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

134.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff and members of the RICO Class have been damaged in the amounts charged by Defendants for FILTERQUEEN® products and finance or interest charges incurred.

135.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff and members of the RICO Class are entitled to statutory damages in the amount of three times the actual damages.

136.    As a result of the above violations and pursuant to 18 U.S.C. § 1964(c), Plaintiff and the RICO Class are entitled to:

   a.    actual damages incurred;

   b.    statutory damages in such amount of three times the actual damages; and

   c.    pre-judgment interest and costs of suit, including Plaintiff's reasonable attorneys' fees.

### COUNT V
### Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

### (Against A-1 Allergy Relief, Inc., HMI Industries, Inc., and TD Bank, N.A.)[2]

137.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

138.    As set forth above, Defendants were sponsors of the promotional sweepstakes "scratcher" ticket attached hereto as Exhibit A (the "Ticket") pursuant to 815 ILCS 525/10.

139.    As set forth above, Defendants violated section 25 of the Illinois Prizes and Gifts Acts, 815 ILCS 525/25, by:

---

[2] Plaintiff brings Count V individually and does not seek certification of a class for Defendants' violations of ICFA.

- failing to disclose on the Ticket the true name or names of the sponsors and the addresses of the sponsors' actual principal place of business, including HMI Industries, Inc., and TD Bank, N.A.; and/or

- failing to disclose on the Ticket that receipt of the prize is subject to a restriction, and a description of the restriction.

140.    As set forth above, Defendants violated section 20 of the Illinois Prizes and Gifts Acts, 815 ILCS 525/20(b), by:

- failing to give the winning prize to Plaintiff without obligation;

- failing to notify Plaintiff at no expense within 15 days of winning the prize; and/or

- misleading Plaintiff as to the nature of available prizes, the odds of winning, the retail value, and the obligations to obtain the prize.

141.    Defendants' violations of the Illinois Prizes and Gifts Act constitute unlawful acts under ICFA pursuant to Section 40 of the Illinois Prizes and Gifts Acts, which provides that "[v]iolation of any of the provisions of this Act is an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."  815 ILCS 525/40(c).

142.    Furthermore, as described above, when Defendants' agents arrived at Plaintiff's home, they engaged in a high-pressure sales presentation, during which Defendants' agents made material misrepresentations to Plaintiff in violation of ICFA, 815 ILCS 505/2, including, but not limited to the following:

- At the sales presentation/product demonstration Plaintiff was instructed to fill out the Credit Card Account Application and told she would receive 0% interest on the financing of the vacuum and air filter.  Plaintiff did not receive

any other documentation with the Credit Card Application.  In fact, the Credit
Card from TD Bank had an APR of 28.99%, which was only disclosed nearly
one month later in the first billing statement to Plaintiff.

- Plaintiff was told that she would receive a half-price discount on the
  FILTERQUEEN® Majestic Surface Cleaner (vacuum) and Defendant Room
  Air Cleaner (air filter) (collectively the "Products").  In fact, she was charged
  $2,798.00 for the vacuum and $1,199.00 for the air filter.

- Plaintiff was told that she would be charged $1,478.00 if she paid off the bill
  in less than two years, or could make 24 monthly payments of $105.00/month
  to pay for the Products in full.  In fact, she was charged $2,798.00 for the
  Products.

- Plaintiff was told that she could try out the Products for two months free of
  charge, yet when she attempted to contact Defendants to cancel the transaction
  within the two-month period, Defendants avoided her calls and, ultimately,
  refused to cancel the transaction.

143.   As described above, Defendants' engaged in deceptive acts or practices in
violation of ICFA, 815 ILCS 505/2, including, but not limited to the following:

- Defendants targeted Plaintiff, a senior citizen, with the illegal promotional
  Ticket.

- Although the power in Plaintiff's home was out, Defendants' agents
  proceeded with the sales presentation/product demonstration by flashlight and
  instructed Plaintiff to fill out the Credit Card Account Application in the dark.

- Defendants' agent "pre-loaded" the vacuum with dirt for the demonstration to mislead Plaintiff as to the amount of dirt that was actually removed from her couch during the demonstration.

- Defendants' agent arbitrarily set the price of the Products to ensure a higher commission.

- Defendants intentionally avoided taking Plaintiff's calls.

- Defendants failed to honor the trial period offered to Plaintiff and refused to cancel Plaintiff's transaction within the trial period.

- Approximately two weeks after Plaintiff incurred charges on the TD Bank Credit Card for the Products, Defendant TD Bank deactivated Plaintiff's Credit Card account, leaving the unpaid balance due and owing.

- Despite failing to disclose any finance charges or APR, Defendant TD Bank imposed a variable APR of 28.99% on the charges incurred on the Credit Card, causing Plaintiff to incur $262.18 in interest charges on the account.

144.   Defendants' misrepresentations, concealments, and deceptive acts were all done for the purpose of inducing Plaintiff into purchasing the Products and incurring high variable interest rate charges.

145.   Defendants intended that Plaintiff rely on the misrepresentations, concealments, and deceptive practices.

146.   The misrepresentations, concealments, and deceptive practices described above occurred in the course of conduct involving trade or commerce.

147.   As a direct and proximate result of Defendants' violations of ICFA, 815 ILCS 505/2, Plaintiff has been damaged in the amount of $3,042.18.

148.     Pursuant to ICFA, 815 ILCS 505/10a, Plaintiff is entitled to punitive damages in such amount as will serve to punish Defendants for their fraud and deceptive acts and to deter others from like misconduct.

149.     As a result of the above violations of ICFA, Plaintiff, individually, is entitled to:

    a.    actual damages in the amount of $3,042.18;

    b.    punitive damages in such amount as will serve to punish Defendants for their fraud and deceptive acts and to deter others from like misconduct;

    c.    injunctive relief to prevent Defendants from continuing to engage in the illegal conduct; and

    d.    pre-judgment interest and costs of suit, including Plaintiff's reasonable attorneys' fees.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and all members of the Classes, respectfully pray for judgment against Defendants as follows:

    a.    for an order certifying that Counts I-IV of this action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) and/or 23(b)(1), and appointing Plaintiff and his counsel to represent the Classes and directing that reasonable notice of this action be given to all other members of the Classes as necessary and appropriate;

    b.    for all actual damages, statutory damages, penalties, and remedies available to Plaintiff and the TILA Class for Defendant TD Bank's violations of the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*;

c.      for all actual damages, statutory damages, penalties, and remedies
available to Plaintiff and the Subclass for Defendants A-1 Allergy Relief,
Inc., HMI Industries, Inc., and TD Bank, N.A.'s violations of the Illinois
Prizes and Gifts Act, 815 ILCS 525/1 *et seq.*;

d.      for all actual damages, statutory damages, penalties, and remedies
available to Plaintiff and the RICO Class for Defendants A-1 Allergy
Relief, Inc., HMI Industries, Inc., and TD Bank, N.A.'s violations of the
Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §
1961 *et seq.*;

e.      for all actual damages, statutory damages, penalties, and remedies
available to Plaintiff individually for Defendants A-1 Allergy Relief, Inc.,
HMI Industries, Inc., and TD Bank, N.A.'s violations of the Illinois
Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et
seq.*

f.      that Defendants be enjoined from mailing the illegal promotional
sweepstakes ticket and engaging in the deceptive acts alleged herein;

g.      that Plaintiff and the Class recover pre-judgment and post-judgment
interest as permitted by law;

h.      for an award to Plaintiff and the Class of their reasonable attorneys' fees
and other litigation costs reasonably incurred pursuant to 15 U.S.C. §
1640, 18 U.S.C. § 1964(c) and/or 815 ILCS 525/40;

i.      for an award to Plaintiff of her reasonable attorneys' fees and other
litigation costs reasonably incurred pursuant to 815 ILCS 505/10a; and

j.      that the Court grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Respectfully submitted,

**GOLDENBERG HELLER ANTOGNOLI & ROWLAND, P.C**

By: /s/ Kevin P. Green
Thomas P. Rosenfeld # 06301406
Mark C. Goldenberg #00990221
Kevin P. Green #06299905
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
618-656-6230 (fax)
mark@ghalaw.com
tom@ghalaw.com
kevin@ghalaw.com