## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**SABRA RENCH, individually and on**
**behalf of all others similarly situated,**

           **Plaintiff,**

                              **No.   3:13-cv-00922-DRH-PMF**

**vs.**

**TD BANK, N.A., HMI INDUSTRIES,**
**INC., and A-1 ALLERGY RELIEF,**
**INC.,**

           **Defendants.**

### MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

      Pending before the Court is defendant TD Bank, N.A.'s ("TD") Rule 12(b)(6) motion to dismiss Counts II-V of plaintiff's complaint (Doc. 21).  Plaintiff Sabra Rench ("Rench") responded (Doc. 36).  For the following reasons, defendant's motion is **DENIED.**

### I.   BACKGROUND

      Plaintiff, on behalf of herself and others similarly situated, filed this five-count complaint on January 8, 2014 alleging claims pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (Count I); the Illinois Prizes and Gifts Act, 815 ILCS 525/1 *et seq.* (Count II); Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) ("The RICO Enterprise Claim") (Count III); RICO, 18 U.S.C. § 1962 ("The RICO Conspiracy Claim") (Count IV); and

the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. (Count V).

Plaintiff generally alleges the following.  HMI Industries, Inc. ("HMI"), A-1 Allergy Relief, Inc. ("A-1"), and TD participated in a coordinated manner in order to defraud the elderly.   Specifically, defendants used the U.S. Mail to deliver promotional sweepstakes "scratcher" tickets to individuals.   Plaintiff further alleges that defendants targeted the elderly for receipt of these scratcher tickets. The scratcher tickets ensured that the recipient would win one of the listed prizes and directed winners to call the "Winners Hotline" to claim the prize.   Defendants conditioned receipt of the prize on an in-home sales presentation for FILTERQUEEN® products including vacuums and air filters.   At the presentation, individuals were directed to complete a TD Bank Credit Card Account Application for the "Renovate Credit Card."   The Application did not disclose the finance charge or the APR.   Sales representatives indicated that individuals could take the FILTERQUEEN® vacuums for a free trial period but later refused attempts to return the products within the trial period.   The vacuum and air filters were charged to the Renovate Credit Card and individuals subsequently received a bill for the charges from TD.   In the specific case of Rench, her attempts to return the products were refused and she incurred $262.18 in interest as a result of the 28.99% APR on the card.

TD now moves pursuant to Rule 12(b)(6) to dismiss Counts II-V of plaintiff's

complaint (Doc. 21).

## II.   ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted.  *Gen. Elc. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  To survive a motion to dismiss, a complaint must establish a plausible right to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The allegations of the complaint must be sufficient "to raise a right to relief above the speculative level."  *Id.*

In making this assessment, the district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.  *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007).  Even though *Twombly* (and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint:   "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal quotations and citations omitted).

**A. Count III: The RICO Enterprise Claim**

First, TD asserts that Rench has failed to allege a RICO § 1962(c) claim. Specifically, TD argues: (1) plaintiff fails to allege that TD directed the affairs of a RICO enterprise, (2) plaintiff fails to allege a sufficient enterprise under RICO, and (3) plaintiff's allegations "do not even approach plausibility" (Doc. 22 at 5-6).

Pursuant to 18 U.S.C. § 1962(c), it is "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."   "To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' "   *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir.1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

**1.   RICO Enterprise**

To state a claim under section 1962(c), plaintiff must first identify an "enterprise."   *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013).   An " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."   18 U.S.C. § 1961(4).   The Supreme Court is clear that this term is to be interpreted broadly.   *Boyle v. United States*, 556 U.S. 938, 944 (2009).   "[A]n

enterprise includes any union or group of individuals associated in fact and . . . RICO reaches a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* "Such an enterprise . . . is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 944-945.

The Court finds that plaintiff has sufficiently alleged a RICO enterprise. While TD asserts that "[a]t most, the Complaint describes a single act of fraud perpetrated by A-1" (Doc. 22 at 10), the Court concludes otherwise. Plaintiff alleges that TD, HMI, and A-1 created an on-going organization, the purpose of which was to defraud vulnerable consumers, the elderly. Plaintiff elaborates by identifying HMI as the manufacturer of the FILTERQUEEN® products, A-1 as the distributor of the products, and TD as the financier. The Court finds that a reasonable inference, considering the timing of events, undisclosed APR, and subsequent refusal to accept the return during the trial period, is that the companies function as a continuing and coordinated unit.

## 2.  Operations or Management Test

"In order to 'participate, directly or indirectly, in the conduct . . .,' one must have some part in directing those affairs." *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("The Operation or Management Test"). "RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a

formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Id.* (emphasis in original). "One must knowingly agree to perform service of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner. It is an agreement, not to operate or manage the enterprise, but personally to facilitate the activities of those who do." *Brouwer v. Raffensperger, Hughes & Co.¸* 199 F.3d 961, 967 (7th Cir. 2000).

TD asserts that extending credit does not rise to the level of directing a RICO enterprise under *Reeves* (Doc. 22 at 7). The Court disagrees with TD's assessment. Plaintiff's complaint clearly alleges that TD did more than extend credit to individuals interested in purchasing vacuums. Specifically, plaintiff alleges that TD is an entity on whose behalf the promotion is conducted (*See* Doc. 28 at 5). TD finances the sales of the FILTERQUEEN® products and then benefits when their agents refuse the products' return. These allegations coupled with those already determined by the Court to be sufficient to allege a RICO enterprise (*e.g.,* the timing of events, absent APR) are sufficient to also allege that TD facilitates the operation of the enterprise.

## 3. RICO Predicate Acts

TD next asserts that the complaint fails to allege that TD committed two or more RICO predicate acts. "A pattern of racketeering activity consists, at the very least, of two predicate acts of racketeering committed within a ten-year period." *Jennings v. Auto Meter Products, Inc.,* 495 F.3d 466, 472 (7th Cir. 2007). "To

fulfill the pattern requirement, plaintiffs must satisfy the so-called continuity plus relationship test:   the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)."   *Id.* (internal quotations and citations omitted).

In this case, Rench asserts that TD committed the predicate act of mail fraud. Federal Rule of Civil Procedure 9(b) requires that a plaintiff "must state with particularity" allegations of fraud.   "[T]he complaint must, at minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud."   *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992).   To establish an act of mail fraud, plaintiff must allege that "(1) defendant has participated in a scheme to defraud and (2) the defendant has mailed or has knowingly caused another to mail a letter or other matter for the purpose of executing the scheme."   *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir. 1994).   "[C]omplaints charging fraud must sufficiently allege the defendant's fraudulent intent."   *Id.* at 495.

The Court finds that Rench has satisfied the Rule 9 heightened pleading standard and sufficiently alleged that TD committed the necessary RICO predicate acts.   Plaintiff alleges that TD, as a sponsor, sent by mail scratcher tickets allegedly directed at the elderly.   Plaintiff further alleges that these scratcher tickets were sent with the purpose of defrauding the elderly via a vacuum and credit card scheme.   While TD asserts that plaintiff has not only failed to adequately allege the

necessary predicate acts but also that TD acted with fraudulent intent, again the Court finds otherwise.   Plaintiff sufficiently pleads facts supporting a strong inference of fraudulent intent.   Specifically plaintiffs allege that TD was a sponsor of the scratcher promotion, that TD, approximately two weeks after the sales pitch, canceled Rench's credit card, and that TD failed to disclose the APR on the credit card application.

**4.  Causation**

TD also argues that plaintiff fails to allege that TD proximately caused plaintiff's injury.   To establish proximate cause, plaintiff must show a "direct relation between the injury asserted and the injurious conduct alleged."   *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992).   "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."   *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

The Court finds that plaintiff has sufficiently alleged proximate cause.   Here the alleged injury includes the price of the vacuum and air filters as well as the credit card interest.   Plaintiff alleges that TD was a sponsor of the scheme and that the credit card financing was intertwined with the vacuum promotion.   The Court finds this sufficient to allege that TD proximately caused plaintiff's injury.

The Court finds that plaintiff has sufficiently pleaded a RICO enterprise claim and will therefore not dismiss Count III.

**B.** **Count IV: The RICO Conspiracy Claim**

TD next argues that Rench has failed to allege a RICO § 1962(d) claim. Specifically, TD argues that the claim should be dismissed because it is "derivative of Plaintiff's defective RICO claims" and because the complaint lacks sufficient allegations that TD entered into an agreement to violate RICO (Doc. 22 at 17).

Pursuant to 18 U.S.C. § 1962(d): "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To allege a RICO conspiracy claim against a defendant, plaintiff must:  (1) identify a proper enterprise; (2) identify defendant's association with that enterprise; and (3) allege that defendant knowingly joined a conspiracy, the objective of which was to operate that enterprise through a pattern of racketeering activity.   *United States v. Tello*, 687 F.3d 785, 794 (7th Cir. 2012).   "[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute."   *DeGuelle v. Camilli,* 664 F.3d 192, 204 (7th Cir. 2011) (quoting *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 732 (7th Cir. 1998)).   "A conspiracy to violate RICO may be shown by proof that the defendant, by his words or actions, objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise, through the commission of two or more predicate crimes."   *Id.* (quoting *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005)).   The Court may infer such an agreement.   *See MCM Partners, Inc. v. Andrews-Bartlett*

& *Associates, Inc.,* 62 F.3d 967, 980 (7th Cir. 1995).

Here plaintiff sufficiently alleges a RICO conspiracy claim. As previously discussed, plaintiff has identified a proper enterprise and established that TD facilitated the operation of the enterprise, *see supra* Part A. A reasonable inference based on the facts alleged in the complaint is that TD entered into an agreement with co-defendants to defraud the elderly through an elaborate vacuum and credit card scheme. Plaintiffs allege co-defendants and TD received not only value of the vacuum and associate air filters but also the credit card interest. *See, e.g., MCM Partners, Inc.,* 62 F.3d at 980 (finding the question "potentially more difficult" when a co-defendant "apparently received nothing of value in return"). Therefore, the Court will not dismiss Count IV of the complaint.

**C.** **Count II: Illinois Prizes and Gifts Act**

TD also asserts that it is not a sponsor of the promotion and plaintiff's conclusory allegations that it is are insufficient to state a claim under the Illinois Prizes and Gifts Act. The Illinois Prizes and Gifts Act prohibits, among other things, a sponsor from conditioning receipt of a prize on the payment of money and prohibits a sponsor from representing that a person has won a prize or unconditionally will be the winner of a prize unless the prize is without obligation, the person is adequately notified, and the representation is not false, deceptive or misleading. 815 ILCS 525/20. The statute defines a "sponsor" as "a person on whose behalf a promotion is conducted to promote or advertise goods, services, or

property of that person." 815 ILCS 525/10. The Court finds that plaintiff has alleged adequate circumstantial evidence of TD's involvement in the scheme to sufficiently allege that TD is a sponsor. *See supra* Part A. Therefore, the Court will not dismiss Count II of plaintiff's complaint.

### D. <u>Count V: Illinois Consumer Fraud and Deceptive Business Practices Act</u>

Finally, TD argues that plaintiff fails to state an Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ICFA") claim because plaintiff fails to allege facts that connect TD to any alleged misrepresentation or fraud. TD also asserts that plaintiff may not recover pursuant to the voluntary payments doctrine. The ICFA prohibits the "misrepresentation or the concealment, suppression or omission of any material fact" in the conduct of any trade or commerce. 815 ILCS § 505/2. In order to state a claim for violation of the ICFA, plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009). Under Illinois' voluntary payments doctrine, "a plaintiff who voluntarily pays money in reply to an incorrect or illegal claim of right cannot recover that payment unless he can show fraud, coercion, or mistake of fact." *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 666 (7th Cir. 2001).

In this case, the Court finds that plaintiff has sufficiently alleged an IFCA

violation.   TD again relies on its assertion that Rench has failed to adequately plead its involvement in the alleged scheme.   The Court has found otherwise.   *See supra* Part A.   Furthermore, the voluntary payment doctrine is an affirmative defense not to be addressed on a motion to dismiss.   Therefore, the Court will not dismiss Count V of plaintiff's complaint.

### III.   <u>Conclusion</u>

Accordingly, the Court **DENIES** motion to dismiss Counts II-V of plaintiff's complaint (Doc. 21).

**IT IS SO ORDERED.**

Signed this 8th day of August, 2014.

Digitally signed by
David R. Herndon
Date: 2014.08.08
14:43:00 -05'00'

**Chief Judge**
**United States District Court**