# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SABRA RENCH, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| TD BANK, N.A., A-1 ALLERGY RELIEF, INC., and HMI INDUSTRIES, INC., | ) ) ) ) |
| Defendant. | ) |

Case No. 3:13-cv-00922-SMY-RJD

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Sabra Rench, filed a six-count Amended Complaint against Defendants TD Bank[1], A-1 Allergy Relief, Inc.[2] and HMI Industries, Inc. ("HMI"), alleging violations of the Federal Truth in Lending Act, the Illinois Prizes and Gifts Act, and the Federal Racketeer Influenced and Corrupt Organizations Act (Doc. 73). Now pending before the Court is Plaintiff's Motion for Class Certification (Doc. 68). HMI filed a response in opposition (Doc. 90) and Plaintiff filed a reply (Doc. 95). For the following reasons, Plaintiff's motion is **GRANTED**.

## Background

HMI is a corporation engaged in the manufacture, marketing and in-home sales of FilterQueen brand vacuums and air filters to consumers. HMI products are sold to consumers throughout the United States exclusively through in home demonstrations (Doc. 70-1 p. 10).

In 2010, HMI engaged TD Bank's services to finance consumer purchases of HMI

---

[1] Plaintiff settled with Defendant TD Bank and an Order was entered dismissing TD Bank with prejudice on December 7, 2016. See Doc. 184.
[2] The Clerk of Court entered default against Defendant A-1 Allergy Relief, Inc. on February 3, 2014 (Doc. 37).

products.  Specifically, in October 2010, TD and HMI agreed to use TD's Renovate Card Program to facilitate HMI's sales to consumers (Doc. 70-2 p. 2).  Under the Renovate Card Program, HMI distributors provided consumers with Renovate Card Applications to finance the purchase of HMI products (Doc. 70-3 p. 2).  Once a sale was made, the HMI distributor submitted the information to TD who transferred funds to the distributor and debited the consumer's Renovate credit card account (Doc. 70-4 pp. 2-3).

From 2009 to 2014, A-1 sold HMI products to 2,482 consumers, including 693 consumers in Illinois.  During the same period, HMI distributors, including A-1, sold HMI products to 1,224 Illinois consumers (Doc. 69-41 pp. 3-5).  From 2010 to 2012, TD, through A-1, financed the purchase of HMI products by 333 consumers, including 117 consumers in Illinois (Doc. 69-42 pp. 3-4).

HMI developed and utilized promotional materials, including scratch cards (Doc. 70-1 pp. 15-16, 38).  The scratch cards were mailed to consumers (Doc. 68-45 pp. 2-7).  The back of the card instructed recipients to "**CALL IMMEDIATELY**" the "**Winners Hotline**" to learn which prize they had won (Doc. 68-44 pp. 2-3).  The scratch cards were designed to induce consumers to allow HMI sales associates into their homes – "entry approval" – to sell HMI products (Doc. 70-1 pp. 21-22, 43).

Plaintiff received a scratch card in the mail sometime between August and September 2012 (Doc. 69-1 ¶ 4).  She scratched a winning hand and called the "Winners Hotline" to see what prize she had won (Doc. 69-1 ¶ 5).  Without telling Plaintiff what prize she had won, the individual answering the hotline call told her that she had to agree to an in-home product demonstration in order to receive her prize (Doc. 69-1 ¶ 6).

Pam Williams, a sales associate with A-1, visited Plaintiff in her home on September 7, 2012 (Doc. 69-1 ¶ 7). Williams proceeded with a sales pitch for a FilterQueen vacuum and filter that lasted several hours, during which time she instructed Plaintiff to complete a single-page TD Bank Credit Card Account Application. The application included Plaintiff's age (72), occupation ("server") and monthly gross income ($1,690) (Doc. 69-9 p. 2). At the conclusion of the visit, Williams left the air filter with Plaintiff. Although Plaintiff had not purchased anything, TD charged $970.00 to her Renovate credit card account on September 10, 2012 (Doc. 69-49 pp. 2-4).

On September 14, 2012, Williams came back to Plaintiff's home, at which time Plaintiff told Williams that she did not want to purchase the filter or vacuum (Doc. 69-1 ¶ 11-12). Nevertheless, Williams proceeded with a second demonstration of the vacuum that again lasted several hours (*Id.*). During the second presentation, Williams offered Plaintiff several "deals" to entice her to purchase the products on a TD Renovate credit card with 0% financing and a two-month "trial period" during which Plaintiff could return the products at no cost (Doc. 69-1 ¶ 13). After several hours, Plaintiff signed the Sales Memorandum and Bill of Sale Receipt, which showed a price of $2,798.00 charged to Plaintiff for the vacuum and filter. Plaintiff never received any documents disclosing the finance charges or interest rates related to the Renovate Account (Doc. 69-1 ¶ 14-15). She wrote to A-1 in October 2012 and requested that they come and pick up the air filter (Doc. 69-1 ¶ 10)).

Plaintiff now moves for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. She seeks to represent three classes:

**The RICO Class**:
- All individuals in the United States who, within the four years preceding the filing of this Complaint: (A) received in the mail a promotional sweepstakes "scratcher" ticket in the form of or substantially similar to Exhibit A (attached

to Plaintiff's Complaint or amendments thereto) identifying A-1 Allergy Relief, Inc. and/or Simple Air Solutions and not identifying HMI Industries, Inc. and/or TD Bank, N.A.,; and (B)(i) purchased a Filter Queen product; or (ii) incurred a charge for a Filter Queen product on a Renovate Credit Card Account.

**The IPGA Subclass**:
- All individuals who are citizens of Illinois and who, within three years prior to the filing of this Complaint: (A) received a promotional sweepstakes "scratcher" ticket in the form of or substantially similar to Exhibit A (attached to Plaintiff's Complaint or amendments thereto) identifying a distributor of HMI Industries, Inc., and not identifying HMI Industries, Inc. and/or TD Bank, N.A.,; and (B)(i) purchased a Filter Queen product; or (ii) incurred a charge for a Filter Queen product on a Renovate Credit Card Account.

**The ICFA Subclass:**
- All Illinois consumers who, within three years prior to the filing of the Complaint, received a promotional sweepstakes "scratcher" ticket in the form of or substantially similar to Exhibit A (attached to Plaintiff's Complaint or amendments thereto) identifying a distributor of HMI Industries, Inc., and not identifying HMI Industries, Inc. and/or TD Bank, N.A.,; and (B)(i) purchased a Filter Queen product; or (ii) incurred a charge for a Filter Queen product on a Renovate Credit Card Account.

## Legal Standard

A district court may certify a case for class-action treatment only if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b).  *See* Fed.R.Civ.P. 23.  In addition, a class must be sufficiently definite that its members are ascertainable. *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006).  In this case, Plaintiff seeks class certification under Rule 23(b)(3).  As such, she must show that issues common to the class members predominate over questions affecting only individual members and that a class action is superior to other available adjudication methods.  Fed. R. Civ. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

A class may be certified only if a district court is "satisfied, after a rigorous analysis," that compliance with Rule 23 has been shown, even if the analysis entails some overlap with the merits. *Wal–Mart Stores, Inc,* 131 S.Ct. at 2551. Plaintiff bears the burden of showing that the proposed class satisfies Rule 23 requirements, but she need not make that showing to a degree of absolute certainty." *Messner*, 669 F.3d at 811 (7th Cir. 2012).

## Discussion

## Rule 23(a) Requirements

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015).[3]

### *Numerosity*

"Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *Pruitt v. City of Chicago,* 472 F.3d 925, 926 (7th Cir. 2006). However, a plaintiff is not required to specify the exact number of persons in the class nor is a plaintiff required to establish the exact identity of the class members. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted). Rather, "[a] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and

---

[3] HMI does not dispute the satisfaction the Rule 23(a) requirements and does not address any of the Rule 23(a) factors in its brief. Nevertheless and in the interest of completeness, the Court will assess each of the four requirements below.

thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir.2014). In other words, a court may make common sense assumptions in determining numerosity. *Ringswald v. Cty. of DuPage*, 196 F.R.D. 509, 511 (N.D. Ill. 2000).

Here, during the relevant periods, over two thousand (2,000) nationwide consumers purchased the HMI products from A-1; over one thousand (1,000) Illinois consumers purchased the products (of which nearly seven hundred were from A-1); and over three hundred (300) HMI product purchases were financed using a TD Credit Card account opened by A-1 (of which over one hundred (100) were Illinois consumers). A class consisting of potentially thousands of recipients of HMI's scratch cards is clearly sufficiently numerous to render joinder impracticable, thereby satisfying Rule 23(a)(1).

*Commonality*

To satisfy commonality, Plaintiff's "claims must depend on a common contention" and "[t]hat common contention…must be of such a nature that it is capable of classwide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc,* 131 S.Ct. at 2551. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998). This standard is generally met when "defendants have engaged in standardized conduct towards members of the proposed class." *Id.* "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir.2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir.1992).

In this case, the putative class members claims all arise under the same statutes and involve common legal issues and depend on the resolution of key common questions: whether HMI and A-1 formed an "enterprise" for a common purpose of engaging in a course of conduct; whether HMI, mailed or knowingly caused another to mail a letter or other matter for the purpose of executing a scheme to defraud; whether HMI acted with fraudulent intent; whether the facts permit an inference that HMI conspired to operate an enterprise through a pattern of racketeering activity; whether HMI was a "sponsor" of the scratch cards; whether the representation on the scratch cards that a person had won a prize or unconditionally would be the winner of a prize without obligation was false, deceptive, and misleading; and whether the scratch cards contained statements likely to deceive a reasonable consumer. Therefore, the commonality requirement is satisfied.

### *Typicality*

For typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

It is well-established that typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d

1013, 1018 (7th Cir. 1992). Typical does not mean identical, and the typicality requirement is liberally construed." *Ladegaard v. Hard Rock Concrete Cutters, Inc*., No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832, *15 (N.D. Ill. Nov. 30, 2000). Given that Plaintiff's claims and the claims of the putative class members are all based on the allegedly deceptive and misleading promotional scratch cards and arise from HMI's alleged RICO, IPGA and ICFA violations, typicality is satisfied.

### *Adequacy*

A representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted). The Court has no reason to believe that proposed Class Counsel are not qualified or that they will not fairly and adequately represent the interests of the class. Plaintiff's counsel have extensive experience representing plaintiffs in class action and complex litigation and possess the ability, resources and experience necessary to prosecute this litigation.

As to class representatives, the adequacy requirement is satisfied when the named representative has "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "does not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D.Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010). Based on its review of the record, the Court has no reason to believe that Plaintiff is not qualified or that she will not fairly and adequately represent the interests of the class. Further, Plaintiff's motive for bringing suit is

not so obviously improper or antagonistic to the class that she could not be its representative. Accordingly, the adequacy requirement is also satisfied.

### **Rule 23(b)(3) Requirements**

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of Rule 23(b)'s three subsections. Here, Plaintiff proceeds under subsection (3), which allows for certification upon a finding that "questions of law or fact common to members of the class predominate over any questions affecting only individual members," and also that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3).

*Predominance*

Under Rule 23(b)(3), a district court must determine whether "the questions or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). "If, to make a *prima facie* showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a *prima facie* showing, then it becomes a common question." *Id*. (quotation omitted). Predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

1. ***The RICO Class***

The RICO statute focuses on the actions of the defendant to defraud…not on the individuals who were defrauded. Plaintiff alleges that mail fraud perpetuated the injury to the class members. Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." *Bridge v. Phoenix Bond & Indem. Co.*, 533 U.S. 639 at 647 (2008). "Such mailings need not…be an essential element of the scheme to defraud, but are sufficient so long as they are incident to an essential part of the scheme." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 at 756-57 (7th Cir. 2014).

A private action may be brought under RICO by "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The "by reason of" language imposes a proximate cause requirement that plaintiff show his injury was actually caused by the violation of § 1962. *Haroco Inc. v. Am. Nat'l Bank & Trust Co.,* 747 F.2d 384, 398 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985). Therefore, all class members must show that they reasonably relied upon the alleged fraudulent acts in order to establish injury "by reason of" the violation of § 1962. Weiss v. Winner's Circle, 1992 U.S. Dist. LEXIS 13288, 1992 WL 220686.

HMI asserts that Plaintiff's RICO claim is premised on individual actions that have nothing to do with the existence of the scratch off ticket, but with statements allegedly made during individual phone calls and at individual sales presentations. HMI further asserts that Plaintiff cannot establish that it proximately caused the claimed injuries to each putative class member without individualized evidence related to the phone calls and home visits.

"Proximate cause, however, is necessarily an individual issue and the need for individual proof alone does not necessarily preclude class certification." *Pella Corp v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). As Plaintiff correctly notes, the determination of whether HMI violated the RICO statute by using the mail to send out scratch cards to induce consumers to purchase their products, depends solely on Defendant's conduct and is the same for every class member. The common and relevant question is whether the scratch cards used and distributed by HMI were likely to mislead and defraud reasonable consumers. "The claims of every class member will rise or fall on the resolution of that question," and "[t]he same legal standards govern every class member's claim." *Id.* The fact that the potential purchasers were subject to individualized oral solicitation does not alter the conclusion that common questions predominate. "The key point is whether the representations were false or misleading is a common question suitable for class treatment." *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 674 (7th Cir. 2015). As such, the proposed RICO class meets the Rule 23(b)(3) predominance requirement.

## 2. *The IPGA and ICFA Subclasses*

Plaintiff argues that the class claims are based on form written materials (promotional scratch cards) that failed to disclose material facts as required by the IPGA and ICFA. She also asserts that the common evidence related to the IPGA claims overlaps with the common evidence for Plaintiff's ICFA claim because any violation of IPGA constitutes an "unlawful practice" in violation of ICFA. HMI again argues that resolution of these claims will depend on what each class member was told during individual phone calls.

It is unlawful under ICFA to knowingly mail or send or cause to be mailed or send a postcard or letter to a recipient in Illinois if: (1) the post card or letter contains a request that the recipient call a telephone number; and (2) the postcard or letter is mailed or sent to induce the

recipient to call the telephone number so that goods, services, or other merchandise may be offered for sale to the recipient; and (3) the postcard or letter does not disclose that goods, services, or other merchandise may be offered for sale if the recipient calls the telephone number. (815 ILCS 505/2PP). Therefore, the information included on the scratch cards that were received by the putative class members will determine HMI's liability under the IPGA and ICFA, not what transpired during the telephone call. Accordingly, predominance is satisfied as to these claims.

*Superiority*

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). There are a large number of putative class members in this case; each with the same claim. Given the number of putative class members and the common questions of law and/or fact that predominate over individual issues, a class action will certainly serve the economies of time, effort and expense and prevent possibly inconsistent results. By contrast, deciding each claim separately would be an extremely inefficient use of both judicial and party resources. Thus, Plaintiff has met the requirements for class certification under Rule 23.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Class Certification (Doc. 68) is **GRANTED** and the Court **CERTIFIES** the following classes pursuant to Federal Rule of Civil Procedure 23:

> **All (A) individuals in the United States who, within the four years preceding the filing of this Complaint received in the mail a promotional sweepstakes "scratcher" ticket in the form of or substantially similar to Exhibit A (attached to Plaintiff's Complaint) identifying A-1 Allergy Relief, Inc. and/or Simple Air Solutions and not identifying HMI Industries, Inc. and/or TD Bank, N.A.,; or (B) individuals in the State of Illinois who, within the four**

**years preceding the filing of the initial Complaint in the Litigation received in the mail a promotional sweepstakes "scratcher" ticket in the form of or substantially similar to Exhibit A (attached to Plaintiff's Complaint) identifying a distributor of HMI Industries, Inc., and not identifying HMI Industries, Inc. and/or TD Bank, N.A.,; <u>and</u> (C)(i) individuals who purchased a Filter Queen product; or (C)(ii) individuals who incurred a charge for a Filter Queen product on a Renovate Credit Card Account through any HMI Distributor.**

Further, the Court **APPOINTS** Sabra Rench, as Class Representative and Kevin Green, Thomas Rosenfeld, Mark Goldenberg and the law firm Goldenberg Heller Antognoli & Rowland, P.C. as Class Counsel.

**IT IS SO ORDERED.**

**DATED: January 2, 2018**

<u>**s/ Staci M. Yandle**</u>
**STACI M. YANDLE**
**United States District Judge**